**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MULTIMODAL MEDIA LLC,<br><br>               Plaintiff,<br><br>    v.<br><br>GUANGDONG OPPO<br>MOBILETELECOMMUNICATIONS CORP.,<br>LTD.,<br>            Defendant. | C.A. No. 2:21-cv-00436-JRG-RSP<br><br>**LEAD CASE**<br><br>**JURY TRIAL DEMANDED** |

**<u>DEFENDANT GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP.,
LTD.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(B)(6)
AND BRIEF IN SUPPORT OF SAME</u>**

## Contents

I.   INTRODUCTION ......................................................................................................5

II.   STATEMENT OF THE ISSUES.............................................................................6

III.   STATEMENT OF FACTS .......................................................................................6

IV.   LEGAL STANDARDS ..........................................................................................10

V.   THE PATENTS-IN-SUIT ARE PATENT INELIGIBLE UNDER 35
U.S.C. § 101....................................................................................................12

VI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR
INFRINGEMENT OF THE ASSERTED CLAIMS OF THE '949 AND
'978 PATENTS......................................................................................................30

VIII.   CONCLUSION.......................................................................................................34

**<u>Cases</u>**

*Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338 and
    1343– 45 (Fed. Cir. 2013) ................................................................................ 26

*Affinity Labs of Texas, LLC v. DirecTV, LLC,* 838 F.3d 1253, 1257 (Fed. Cir.
    2016) ................................................................................................... 11, 30

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir.
    2015) ........................................................................................................ 31

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014) ...................... 5, 12, 17, 23

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................ 10, 29

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ........................ 26

*Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1315 (Fed. Cir. 2019) ..................... 12

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284
    (Fed. Cir. 2011) .......................................................................................... 33

*Chamberlain Group, Inc. v. Techtronic Industries Co*., 935 F.3d 1341, 1348 (Fed.
    Cir. 2019) ................................................................................................... 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776
    F.3d 1343, 1347 (Fed. Cir. 2014) ................................................................... 13

*Elec. Power Grp., LLC v. Alstom S.A*., 830 F.3d 1350, 1354 (Fed. Cir. 2016) ............... 13, 25, 28

*Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1338 (Fed. Cir. 2016) ...................... 11, 15

*ESW Holdings, Inc. v. Roku, Inc*., No. 6-19-CV-00044-ADA, 2021 WL 1069047,
    at *5 (W.D. Tex. Mar. 18, 2021) .................................................................... 33

*Fairwarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) ................. 29

*In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 612 (Fed. Cir. 2016) ................ 15, 29

*Intellectual Ventures I LLC v. Erie Indem. Co*., 850 F.3d 1315, 1330 (Fed. Cir.
    2017) ........................................................................................................ 15

*Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed.
    Cir. 2017) ................................................................................................... 33

*Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1319 (Fed. Cir.
    2016) ........................................................................................................ 12

*Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)................................................................................. 17

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-00662-JRG, 2018 WL 6804804, at *1 (E.D. Tex. 2018) ....................................... 10

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344-46 (Fed. Cir. 2018) ........................ 28

*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014)................................ 32

*Maxon, LLC v. Funai Corp., Inc.*, Case No. 2017-2139, 2018 WL 1719101, at *2 (Fed. Cir. Apr. 9, 2018)............................................................. 30

*Mortg. Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016)......................................................................... 30

*In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 612; *Two-Way Media*, 874 F.3d at 1339 ........................................................................ 26

*PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021)......................... 12

*Progme Corp. v. Comcast Cable Commc'ns LLC*, No. CV 17-1488, 2017 WL 5070723, at *10-11 (E.D. Pa. Nov. 3, 2017) ..................................... 32

*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017)............................... 11

*Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 (Fed. Cir. 2000)........................... 33

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*, 2016 U.S. Dist. LEXIS 64121, at *14 (E.D. Tex. Jan. 4, 2016) ..................................................... 12, 26

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ................................... 11

*Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ........................................................................ 10

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021)..................... 33

*TecSec, Inc. v. Int'l Bus. Machines Corp.*, 769 F. Supp. 2d 997, 1010 (E.D. Va. 2011) ........................................................................ 33

*Travel Sentry v. Trapp*, 877 F.3d 1370, 1380 (Fed. Cir. 2017) ................................................... 31

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017)........................................................................ 12

*Two-Way Media*, 874 F.3d at 1339 ........................................................................ 23

*Ubisoft Entm't, S.A. v. Yousician Oy*, 814 F. Appx. 588, 589 (Fed. Cir. 2020) ........................ 13

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) .......................................... 16

*Umbanet, Inc. v. Epsilon Data Mgmt., LLC*, 263 F. Supp. 3d 647, 653 (E.D. Tex. 2017) ............................................................................................................................................ 15

*University of Florida Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1364 and 1366 (Fed. Cir. 2019) ........................................................................................................... 13

*VOIT Techs., LLC v. Del-Ton, Inc.*, No. 2018-1536, 757 Fed. Appx. 1000, 1002- 1003 (Fed. Cir. Feb. 8, 2019) ................................................................................................ 16, 23

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Guangdong Oppo Mobile Telecommunications Corp., Ltd. ("OPPO") hereby respectfully submits its Motion to Dismiss Plaintiff Multimodal Media LLC's ("Multimodal") Complaint for patent infringement.

## I.     INTRODUCTION

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, the Supreme Court held that, under 35 U.S.C. Section 101, a patent claim directed to an abstract idea must add an "inventive concept"— something "significantly more" than the abstract idea itself—to be patent eligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). The Federal Circuit has repeatedly reaffirmed that merely collecting, combining, transmitting, or manipulating data or information using generic computer hardware and functionality is not patentable subject matter, even if confined to a particular technology or field of use like mobile communications.

For this reason, each of the patents in Plaintiff 's Complaint fails the *Alice* test. Each of U.S. Patent Nos. 7,929,949 (the "'949 Patent"), 8,107,978 (the "'978 Patent"), 9,185,227 (the "'227 Patent") and 10,552,030 (the "'030 Patent") embodies abstract ideas because they claim nothing more than collecting, combining, transmitting, and/or manipulating data in various ways that any generic computer can perform. For example, the asserted claims of the '949 patent involve only vague and generic language describing, in the most general terms, methods relating to the abstract concept of creating, transmitting, receiving and interacting with message data using a mobile device. The '978 patent is similarly directed to the abstract idea of creating and transmitting messaging data. Continuing this theme of claiming nothing more than generic limitations relating to handling data, the '227 patent is directed to the wholly abstract idea of receiving and transmitting media, control and notification data to complete a communication after a missed call. Finally, the '030 patent is directed to the abstract idea of using software to

allow a user to specify a certain set of data and taking an action based on that data. None of the asserted patents adds an inventive concept to their abstract ideas. Rather, they each only recite generic computer and wireless hardware. Their claims are therefore not patent eligible, and Plaintiff's claims should be dismissed.

Moreover, Multimodal's infringement claims for the '949 patent should be dismissed for the independently sufficient reason that they cannot be infringed by a single actor, yet Multimodal fails to allege any of the facts required for joint infringement. Specifically, the claims and Multimodal's own allegations show that at least a sender, server operator and recipient are required to perform the steps of the claimed methods. Multimodal does not and cannot allege that OPPO or any other entity exercises direction or control over the purported steps, as required. Similarly, Plaintiff fails to state a claim for infringement of the '978 patent because Plaintiff's own allegations show that the system claims include limitations purportedly performed by Google, a third party.

For these reasons, OPPO respectfully requests that this Court dismiss Multimodal's claims with prejudice pursuant to Rule 12(b)(6).

## II.     STATEMENT OF THE ISSUES

(1) Whether the Court should dismiss Plaintiff's claims with prejudice because the claims of the patents-in-suit are invalid under § 101 for lack of patent-eligible subject matter; and (2) whether the court should dismiss with prejudice Plaintiff's claims for infringement of the '949 and '978 patents for failure to state a claim for the additional, independently sufficient reason that Plaintiff does not adequately allege infringement.

## III.     STATEMENT OF FACTS

### A.     The '949 Patent

Multimodal asserts infringement of claims 1-7 and 9 of the '949 patent. (Declaration of Nicole S. Cunningham ("Cunningham Dec.") at ¶2, Ex. A (Multimodal's Disclosure of Asserted Claims and Infringement Contentions).) The '949 patent is entitled "Interactive Multimodal Messaging" and generally discloses a method and system "to enable a recipient to interact with an interactive multimodal message triggered on the recipient's mobile device." ('949 patent, Abstract.) Claim 1 of the '949 patent is representative and recites:

> 1.  A method of enabling a recipient to interact with an interactive multimodal message triggered on a mobile device of said recipient, comprising the steps of:
>
> creating said interactive multimodal message by a sender using a client application available to said sender, wherein said created interactive multimodal message is stored at a server;
>
> sending a notification comprising a pointer to said stored interactive multimodal message to said mobile device of the recipient by said server;
>
> triggering the stored interactive multimodal message on the mobile device of the recipient by accessing said pointer in said notification; and
>
> transmitting service information to the mobile device of the recipient through said triggered interactive multimodal message;
>
> whereby the interactive multimodal message triggered on the mobile device enables said recipient interaction.

('949 patent at col. 9:50-67.)

**B.    The '978 Patent**

Multimodal asserts infringement of claims 10-14 of the '978 patent. (Cunningham Dec. at ¶2, Ex. A (Multimodal's Disclosure of Asserted Claims and Infringement Contentions).) The '978 patent is entitled "Addressing Voice SMS Messages" and generally discloses a method and system for allowing voice SMS messaging "using standard methods of recipient addressing" (using addresses stored in an address book) as have been previously used by SMS text

messaging. ('978 patent, 1:36-40, 1:65-2:1.) Claim 10 of the '978 patent is representative and recites:

> 10. A system for voice short message service messaging, comprising::
>
> > a client application on a mobile device, wherein said client application integrates voice content to a text message created by a user using methods of recipient addressing as used by text short message service messaging;
> >
> > a memory storage means on said mobile device for storing a list of addresses of recipients;
> >
> > a user interface on the mobile device for said user to input voice messages and text messages; and
> >
> > a server for remotely recording and storing said voice messages of the user, wherein said server is configured to provide access to said recipient for listening to said recorded voice message; and
> >
> > said client application for transmitting a voice message notification with an addressed text message to said recipients.

('978 patent at col. 11:9-26.)

**C.     The '227 Patent**

Multimodal asserts infringement of claims 1-3, 5-13 and 15-19 of the '227 patent. (Cunningham Dec. at ¶2, Ex. A (Multimodal's Disclosure of Asserted Claims and Infringement Contentions).) The '227 patent is entitled "Sender Driven Call Completion System" and generally discloses a "method and system for completing an incomplete call made by the calling party to a called party, provide a call completion application on a calling party device." ('227 patent, Abstract.) Claim 1 of the '227 patent is representative and recites:

> 1. A computer implemented method for completing an incomplete call made by a calling party to a called party, comprising::
>
> > providing a call completion application executable by at least one processor on a calling party device;
> >
> > detecting said incomplete call made by said calling party to said called party, by said call completion application on said calling party device, wherein said

incomplete call is a call that is not connected to a called party device due to occurrence of one or more of a plurality of events;

receiving one or more of a plurality of call completion actions to be performed by said call completion application on said calling party device to complete said detected incomplete call, wherein said plurality of call completion actions are selected according to one or more responses provided by said calling party through a graphical user interface of said calling party device, wherein said call completion actions comprise setting a reminder to call back said called party at a configurable time, recording media data on said calling party device, transmitting said media data to a called party device, transmitting a missed call alert to said called party device, transmitting a notification of said detected incomplete call to said called party device, transmitting a notification on availability of said called party, transmitting said media data to a social networking platform, transmitting an automated message requesting said called party to call back said calling party when available, and any combination thereof, and

triggering execution of said received one or more of said call completion actions by said call completion application on said calling party device based on one or more of action execution criteria for said completion of detected incomplete call.

('227 patent at col. 23:26-59.)

**D.    The '030 Patent**

Multimodal asserts infringement of claims 1-2, 6-9, 13 and 14 of the '030 patent. (Cunningham Dec. at ¶2, Ex. A (Multimodal's Disclosure of Asserted Claims and Infringement Contentions).) The '030 patent is entitled "Multi-Gesture Media Recording System" and generally discloses a computer-implemented method and system "for recording media data such as audio data in one or more communication modes based on gestures on a graphical user interface (GUI)." ('030 patent, Abstract.) Claim 1 of the '030 patent is representative and recites:

1.  A computer implemented method for recording media data, comprising:

providing a gesture based media recording application executable by at least one processor configured to manage a graphical user interface of an electronic device for said recording of media data in one or more recording modes on said electronic device;

defining one or more interface regions on said graphical user interface of said electronic device by said gesture based media recording application;

detecting a first gesture from among multiple gestures on a first of said defined interface regions, by said gesture based media recording application, wherein said first gesture is a press and hold gesture;

starting said recording of media data in a push to talk (PTT) recording mode, by said gesture based media recording application, on said detection of said first gesture on said first of said defined interface regions;

dynamically changing, by said gesture based media recording application, functions associated with said one or more defined interface regions based on said detected first gesture on said one of said defined interface regions; and

detecting a second gesture from among said multiple gestures, by said gesture based media recording application, wherein said second gesture is a slide and hold gesture, or a swipe and hold gesture from said first of said defined interface regions to a second of said defined interface regions proximate to said first of said defined interface regions, and wherein said recording of said media data continues uninterrupted during and after performance of said second gesture.

('030 patent at col. 22:63-23:27.)

## IV.    LEGAL STANDARDS

### A.    Motions to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court accepts well-pleaded factual allegations but disregards conclusory statements and legal conclusions. *Simio, LLC v. FlexSim Software Prods., Inc*., 983 F.3d 1353, 1365 (Fed. Cir. 2020); *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-00662-JRG, 2018 WL 6804804, at *1 (E.D. Tex. 2018).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 sets forth the categories of patent-eligible subject matter, but "contains an important implicit exception" for abstract ideas, which are not patent-eligible. *Alice*, 573 U.S. at 216. The two-step *Alice* framework governs whether computer-based claims are ineligible under § 101. *Id*. at 217-27. Patent-ineligibility is a threshold issue that "may be, and frequently has

been, resolved on a Rule 12(b)(6)" motion as a matter of law where there are no relevant fact disputes. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

1. ***Alice* Step 1: Determine if the Claims are Directed to an Abstract Idea**

At step one, the Court determines whether the asserted claims are, at their core, directed to an abstract idea despite the computer or technological features. *Id*. at 218. The Court evaluates the "'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to [an abstract idea]." *Affinity Labs of Texas, LLC v. DirecTV, LLC,* 838 F.3d 1253, 1257 (Fed. Cir. 2016) (citation omitted). A key inquiry is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted).

A claim does not avoid abstraction when "computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1336 (Fed. Cir. 2016). Rather, to qualify under Section 101 a claim must provide a "specific asserted improvement in computer capabilities." *Id*. (holding that the patent at issue was not directed to an abstract idea because the claims were "directed to a specific improvement to the way computers operate, embodied in" a "self-referential table"). Confining the claim to "a particular existing technological environment" does not make it concrete. *Affinity Labs*, 838 F.3d at 1259. So, for example, a patent directed to "providing out-of-region access to regional broadcast content" in cellphones is still "an abstract idea." *Id*. at 1258.

2. ***Alice* Step 2: Determine if the Claims Add an Inventive Concept**

At step two, the Court determines whether the claim elements, individually or collectively, add "significantly more"—something "inventive"—apart from the abstract idea.

*Alice*, 573 U.S. at 217-22. The patent must add a limitation or combination of limitations

"sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573

U.S. at 221 (citation omitted). These "additional features" must be more than "well-understood,

routine, conventional activities previously known to the industry." *Id.* "[M]ere recitation of a

generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible

invention." *Id.*

Implementing an abstract idea in a "'particular ... technological environment'" using

conventional components does not make the claims "'any less abstract'" and contributes nothing

inventive. *Chamberlain Group, Inc. v. Techtronic Industries Co*., 935 F.3d 1341, 1348 (Fed. Cir.

2019) (citation omitted); *Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1319

(Fed. Cir. 2016) (citation omitted). Nor may claims simply recite "generic functional language to

achieve [the] purported solutions" without claiming "'how the desired result is achieved.'" *Two-*

*Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017)

(citation omitted). As with step 1, tying an abstract idea to a particular technological environment

or field of use is not inventive. *Alice*, 573 U.S. at 223.

## V.     THE PATENTS-IN-SUIT ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101

"[C]laims that involve collecting, organizing, recognizing, and/or transmitting

information a[re] abstract ideas." *Rothschild Location Techs. LLC v. Geotab USA, Inc*., 2016

U.S. Dist. LEXIS 64121, at *14 (E.D. Tex. Jan. 4, 2016), report and recommendation adopted,

2016 WL 2847975 (E.D. Tex. May 16, 2016); *Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306,

1315 (Fed. Cir. 2019) (finding claims "drawn to the idea of capturing and transmitting data from

one device to another" abstract and ineligible); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th

1310, 1317 (Fed. Cir. 2021) (finding claims ineligible that were directed to the "abstract idea of

1) collecting data[] [and] 2) recognizing certain data within the collected data set"). Similarly, the Federal Circuit has repeatedly found that claims for collecting, processing, delivering and displaying a certain type of information (such as instructional content, physiological data, and user-selectable video) are directed to abstract ideas and ineligible on the pleadings. *See, e.g., Ubisoft Entm't, S.A. v. Yousician Oy*, 814 F. Appx. 588, 589 (Fed. Cir. 2020) (instructional content); *University of Florida Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1364 and 1366 (Fed. Cir. 2019) (physiological data); *Affinity Labs.*, 838 F.3d at 1255-57 (user-selectable video streaming); *Intellectual Ventures I*, 838 F.at 1315 (claims were directed to the abstract idea of "delivering user-selected media content to portable devices").

The Federal Circuit has repeatedly held that using standard computer hardware and functionalities—such as simply collecting, retrieving, processing, storing, displaying or manipulating data—is not inventive. *See, e.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (holding that "a process of gathering and analyzing information of a specified content, then displaying the results" without "any particular assertedly inventive technology for performing those functions" is patent ineligible); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and storage is undisputedly well-known."). There is no inventive concept in a patent that "simply recites the use of generic features" and "routine functions" of cell phones, "such as transmitting and receiving signals." *Affinity Labs*, 838 F.3d at 1262. Similarly, a method for identifying characteristics of data files "on a processing system" fails the test if it neither "improve[s] the functioning of the computer itself " nor "improv[es] the way a computer stores and retrieves data in memory." *Intellectual Ventures I*, 838 at 1315 (quotation marks and citation omitted).

A.      **The '949 Patent**

1.      *Alice* **Step 1: The '949 Patent Is Directed to the Abstract Idea of Creating, Transmitting, Receiving and Interacting with Message Data**

Similar to the ideas relating to collecting, transmitting, storing, receiving and manipulating data found abstract in the cases discussed above, the '949 Patent is directed to the abstract concept of creating, transmitting, receiving and interacting with message data using a mobile device. Tellingly, Plaintiff itself describes it this way, alleging that the '949 patent is directed to technology to "permit users to create, send, receive, and interact with multimodal messages." (Complaint ¶ 14.) Claim 1 is nothing more than a series of generic steps and references to basic processes used to communicate message data between a sender and recipient, via a server. For example, the steps in claim 1 include:

- "creating said interactive multimodal message by a sender using a client application available to said sender, wherein said created interactive multimodal message is stored at a server" – *this step merely describes a sender inputting message data using a software application*

- "sending a notification comprising a pointer to said stored interactive multimodal message to said mobile device of the recipient by said server" – *this step describes the basic function of sending a notification to the recipient regarding the message data, including a pointer to the message data stored on a server (i.e., sending a link to the recipient via text message)*

- "triggering the stored interactive multimodal message on the mobile device of the recipient by accessing said pointer in said notification" – *this step merely describes a recipient triggering the stored message data by accessing the pointer (i.e., clicking the link in the text message)*

- "transmitting service information to the mobile device of the recipient through said triggered interactive multimodal message" – *this step describes the basic function of transmitting information to a recipient*

- "whereby the interactive multimodal message triggered on the mobile device enables said recipient interaction" – *this step merely generically describes that the recipient can interact with the message data*

('949 Patent at col. 9:50-67).

When reduced to its conceptual elements, claim 1 thus describes nothing more than creating, transmitting, and storing interactive message data, then sending a notification to a recipient about the message data, following which the recipient triggers access to the stored message data and receives a transmission of information. These steps are simply "generalized steps to be performed on a computer using conventional computer activity" to create, send, store, transmit and interact with messaging data over a network. *In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 612 (Fed. Cir. 2016) (quoting *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1338 (Fed. Cir. 2016)). Further, that claim 1 recites a mobile device and server does not render the claim less abstract. *See, e.g., Content Extraction*, 776 F.3d at 1347 (expressly rejecting argument that claims directed the abstract concept of data recognition and storage were patent eligible because they required both a computer and a scanner).

Moreover, courts have repeatedly found that facilitating access to information such as messages, similarly to the steps recited in the '949 patent—including by using an identifier (or, in the case of the '949 patent, a pointer)—is abstract. As the Federal Circuit has emphasized, for example, "[r]emotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet." *Intellectual Ventures I LLC v. Erie Indem. Co*., 850 F.3d 1315, 1330 (Fed. Cir. 2017); *see also Umbanet, Inc. v. Epsilon Data Mgmt., LLC*, 263 F. Supp. 3d 647, 653 (E.D. Tex. 2017) (describing concept of "enabling selective access to a message" as "a generally abstract idea").

The '949 patent is similar to the one invalidated in *TLI*, for example. The patent-at-issue there claimed a method consisting of "recording images," "storing the images" "in a digital form," "transmitting data," "receiving the data," "extracting classification information," and "storing the digital images" in a server. *In re TLI Comms*., 823 F.3d at 610. The Federal Circuit

held that this method was directed to an abstract idea. *Id*. at 611. Like the patent in *TLI*, the '949 Patent uses "conventional or generic technology" (as with the image data in *TLI*, basic processes for creating, transmitting, storing and receiving data (here, message data)) in a "well-known environment" (here, a mobile device). *Id*. at 612; *see also Rothschild*, U.S. Dist. LEXIS 64121, at *15-16 (holding that the invention was just "a well-understood, fundamental concept of retrieving and sending data along with the requirement that it be performed b[y] two 'positional information devices'"); *VOIT Techs., LLC v. Del-Ton, Inc*., No. 2018-1536, 757 Fed. Appx. 1000, 1002-1003 (Fed. Cir. Feb. 8, 2019) (non-precedential) (holding method claims for "providing secure interactive communication of text and image information" were directed to the abstract idea of "entering, transmitting, locating, compressing, storing, and displaying data (including text and image data)" and therefore was not patent-eligible).

At its core, the '949 Patent is directed to the general concept of creating, sending, storing, receiving, and interacting with data, disembodied from any concrete application, and is therefore a patent-ineligible abstract concept.

## 2.   *Alice* **Step 2: The '949 Patent Adds Nothing Inventive to the Abstract Idea**

Once the court determines that the asserted claims are directed toward an abstract idea, it proceeds to step two of the *Alice* inquiry: "whether the claims do *significantly* more than simply describe that abstract method." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (emphasis added). Specifically, the court looks at "whether the claims contain an inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Id*. (quoting *Alice*, 134, S.Ct. at 2357). The claim must include "additional features" that are more than "well-understood, routine, conventional activity." *Id*. (quotation omitted). The second step of the *Alice*

test is "plainly related" to the first step and often involves "overlapping scrutiny of the content of the claims." *Elec. Power*, 830 F.3d at 1353.

The Federal Circuit has been clear that certain things do not qualify as an "inventive concept." For example, "simply describ[ing] a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer" is not an additional feature or inventive concept. *Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). Similarly, "insignificant 'data-gathering steps,' … add nothing of practical significance to the underlying abstract idea." *Ultramercial*, 772 F.3d at 716 (quotation omitted).

It is clear that the claims of the '949 patent do not do something "significantly more" than describe the abstract idea of creating, transmitting, receiving, and interacting with message data. For example, claim 1 generically describes: creating an interactive multimodal message using a client application (i.e., entering message data using software), storing the message data at a server, sending a notification comprising a pointer to the stored message data to a recipient (i.e., sending a link to the recipient via text message), the recipient triggering the stored message data by accessing the pointer (i.e., clicking the link), transmitting information to the recipient through the triggered message data, and enabling the recipient to interact with the message data. ('949 Patent at col. 9:50-67).

In short, the claim is nothing more than a generic description of a method in which message data is created by a sender, transmitted over a network to a server, where it is stored, and then transmitted to a recipient's mobile device after the recipient receives and accesses a pointer to the message data stored on the server (i.e., clicks a link to the message data). Thus, similarly to the claim at issue in *Intellectual Ventures I*, the steps of claim 1 of the '949 patent

describe nothing more than a "generic web server with attendant software" that stores and provides access to message data and communicates with the mobile devices of senders and recipients, which the Federal Circuit has found insufficient to transform an abstract idea into a patent-eligible concept. *Intellectual Ventures I, LLC*, 792 F.3d at 1370. The steps of claim 1 merely implement the abstract idea with "routine, conventional activit[ies]" of mobile devices and servers, such as storing, transmitting, receiving and interacting with message data. These routine, conventional functions add nothing inventive and are insufficient to transform an ineligible abstract idea into patent-eligible subject matter. *See, e.g., Ultramercial*, 772 F.3d at 716; s*ee also Two-Way Media*, 874 F.3d at 1339 (holding claims directed to abstract idea of sending information, directing the sent information, monitoring receipt of the sent information, and accumulating records about such receipt and lacked an inventive concept because the claim language required only generic technology functioning in its conventional manner); *VOIT,* 757 Fed. Appx. at 1002-1003 (holding claims directed to abstract idea of "providing secure interactive communication of text and image information" with generic functions such as "entering, transmitting, locating, compressing, storing, and displaying data (including text and image data)" had no inventive concept).

The remaining claims of the '949 patent are directed to the same abstract idea as claim 1 and add nothing inventive to that idea.[1] In addition to the generic substantive limitations described above, dependent claims 2-4 merely recite routine, conventional ways that a recipient

---

[1] It is unnecessary to examine each claim of a patent in making a patent eligibility determination. *Content Extraction*, 776 F.3d at 1348. Rather, courts analyze a representative claim (or claims) where multiple asserted claims are "substantially similar and linked to the same abstract idea." *Id*. (quotation omitted). In addition to claim 1, Multimodal has asserted claims 2-7 and 9. Cunningham Dec. at ¶2, Ex. A (Multimodal's Disclosure of Asserted Claims and Infringement Contentions). Each of these claims is "substantially similar and directed to the same abstract idea" that is the focus of claim 1.

who receives a notification regarding message data may "trigger" access to the message data. The claimed ways of "triggering" include such generic and common functions as using dual-tone multi frequency dialogs (i.e., automated dial-in systems using tones or sounds), voice prompts, automated speech recognition, and http (claim 2), navigating through voice messages (claim 3), or activating a link in a text message (claim 4). (*See* '949 Patent at 10:1-12). Similarly, claim 5 adds nothing except that the transmitted data provides the recipient with options to select from; recipients of a message being provided with options from which they can select is a basic function of human interaction and cannot provide the requisite inventive step. (*Id*. at 10:13-15). Claim 6 recites the step of transmitting data (specifically, service content) from the sender to the recipient based on selecting an option and claim 7 recites the step of billing the recipient for the transmitted content, both of which clearly add nothing inventive. (*Id*. at 10:16-21). Finally, claim 9 recites the step of forwarding the message to a plurality of second recipients simultaneously. (*Id*. at 10:27-29).  This is nothing more than transmitting message data again, which does not add an inventive concept for the same reasons discussed above for the other transmitting steps.

Thus, for the same reasons described above, these dependent claims – whether considered individually or in combination with claim 1 – fail to provide any meaningful limitation that would provide an "inventive concept," and therefore are no more patent-eligible than independent claim 1.

     **B.**     **The '978 Patent**

     **1.**     *Alice* **Step 1: The '978 Patent Is Directed to the Abstract Idea of Creating and Transmitting Voice Data with a Text Message**

Like the '949 patent, the '978 patent is directed to the abstract idea of creating and transmitting messaging data (specifically, integrated voice and text message content) and suffers from similar defects that render its claims patent-ineligible. As discussed above, the cases are

legion holding that claims that describe nothing more than basic processes as creating, storing, and transmitting data – including messaging data – are abstract and not patent-eligible. *See., e.g.,* I*n re TLI Commc'ns LLC Patent Litig*., 823 F.3d at 612; *Two-Way Media L*, 874 F.3d at 1339 (holding claims directed to abstract idea of sending information, directing the sent information, monitoring receipt of the sent information, and accumulating records about such receipt and lacked an inventive concept because the claim language required only generic technology functioning in its conventional manner); *VOIT Techs.*, 757 Fed. Appx. at 1002-1003 (non-precedential) (holding method claims for "providing secure interactive communication of text and image information" were directed to the abstract idea of "entering, transmitting, locating, compressing, storing, and displaying data (including text and image data)" and was therefore not patent-eligible); *see also Rothschild*, U.S. Dist. LEXIS 64121, at *15-16.

Yet that is precisely what the claims of the '978 patent recite, with nothing more. For example, representative claim 10 of the '978 patent recites nothing more than <u>inputting and recording data</u> (including voice and text data), <u>storing data</u> (including the messaging data and address lists), and <u>transmitting notifications regarding the messaging data</u>:

- "a client application on a mobile device, wherein said client application integrates voice content to a text message created by a user using methods of recipient addressing as used by text short message service messaging" – *this limitation merely describes a user <u>creating voice and text message content</u> using a software application and integrating them using "standard methods" for text SMS*

- "a memory storage means on said mobile device for storing a list of addresses of recipients" – *this limitation describes the basic function of <u>storing data</u> in memory, specifically, a list of addresses*

- "a user interface on the mobile device for said user to input voice messages and text messages" – *this limitation merely describes a generic user interface for <u>inputting</u> voice and text messages*

- "a server for remotely recording and storing said voice messages of the user, wherein said server is configured to provide access to said recipient for listening

to said recorded voice message" – *this limitation describes a generic server for recording and storing voice message data*

- "said client application for transmitting a voice message notification with an addressed text message to said recipients" – *this limitation merely describes transmission of data (specifically, a voice message notification)*

('978 Patent at col. 11:9-26).

Thus, claim 10 recites nothing more than generic limitations for creating, inputting, recording, storing, and transmitting messaging data, describing only generic, conventional components such as user interface, memory, and a server. Moreover, the claim limitation whereby the client application "integrates" voice content and a text message using methods of recipient addressing used by text SMS does not add anything to the claim that would make it less abstract. In fact, the specification of the '978 patent explicitly makes clear that the process claimed by this limitation is merely a "standard method" that has been used by text SMS previously. See, e.g., '978 patent at 2:7-10 ("The method and system disclosed herein, allows voice short message service (SMS) messaging using standard methods of recipient addressing as used by text SMS messaging."). Again, these steps are simply "generalized steps to be performed on a computer using conventional computer activity" to create, send, store, and transmit messaging and address data over a network. *In re TLI Comms*., 823 F.3d at 612.

As with the '949 patent, the '949 patent is particularly analogous to the claims invalidated in *In re TLI Commc'ns LLC Patent Litig.*. In *TLI*, the Federal Circuit held claims were directed to an abstract idea that included the steps of, *inter alia*, "recording images," "storing the images" "in a digital form," "transmitting data," "receiving the data," and "storing the digital images" in a server. *Id*. at 610. Just like in *TLI*, the asserted claims of the '978 patent are directed to recording, storing in digital form in a server, and transmitting data – voice and text message data and address here, and image data in *TLI*. Like the patent in *TLI*, the '949

Patent uses "conventional or generic technology" to do so, and performs these generic functions in a "well-known environment" (here, a mobile device). *Id*. at 612; *see also Rothschild,* U.S. Dist. LEXIS 64121, at *15-16 (holding that the invention was just "a well-understood, fundamental concept of retrieving and sending data along with the requirement that it be performed b[y] two 'positional information devices'").

For all these reasons, the '978 Patent is directed at the abstract idea of creating and transmitting voice data with a text message and is therefore patent-ineligible.

      2.    ***Alice* Step 2: The '978 Patent Adds Nothing Inventive to the Abstract Idea**

For the same reasons described above with respect to the '949 patent, which is similarly directed merely to generic functions relating to messaging data, the claims of the '978 patent fail *Alice* step 2 because they do not do something "significantly more" than describe the abstract idea of creating and transmitting messaging data. Representative claim 10 generically describes (1) creating voice and text message content (i.e., messaging data) using a client application, (2) storing recipient address data in memory, (3) a user interface for inputting voice and text messages, (4) recording and storing voice messages at a server, and (5) transmitting a voice message notification with a text message (again, merely transmitting data). ('978 Patent at col. 11:9-26).

Thus, claim 10 includes nothing more than a generic description of a system comprised of conventional, off-the-shelf components (for example, a memory and server) where message data is input to a user interface by a sender, recorded and stored at a server, and then a voice message notification is transmitted to a recipient with a text message using address data also stored at a server. This describes nothing more than a "generic web server with attendant software" that stores and provides access to message and address data and communicates with

the mobile devices of senders and recipients, which the Federal Circuit has found insufficient to transform an abstract idea into a patent-eligible concept. *See, e.g., Intellectual Ventures I, LLC*, 792 F.3d at 1370. These limitations, both individually and combined, implement the abstract idea of claim 10 with mere "routine, conventional activit[ies]" of mobile devices and servers, such as storing, transmitting, combining, and recording data; such routine, conventional functions add nothing inventive and are insufficient to transform an ineligible abstract idea into patent-eligible subject matter. *See, e.g., Ultramercial*, 772 F.3d at 716; s*ee also Two-Way Media*, 874 F.3d at 1339 (holding claims directed to abstract idea of sending information, directing the sent information, monitoring receipt of the sent information, and accumulating records about such receipt and lacked an inventive concept because the claim language required only generic technology functioning in its conventional manner); *VOIT,* 757 Fed. Appx. at 1002-1003 (holding claims directed to abstract idea of "providing secure interactive communication of text and image information" with generic functions such as "entering, transmitting, locating, compressing, storing, and displaying data (including text and image data)" had no inventive concept).

Finally, the other asserted claims of the '978 patent are ineligible because they are directed to the same abstract idea as claim 10 and add nothing inventive.[2] In addition to the limitations described above for claim 10, dependent claims 11-12 merely generically describe a server that stores voice messages or transmits voice message notifications. (*See* '978 Patent at 11:27-31). These limitations merely describe the same generic functions (storing or transmitting

---

[2] Claim 10 is representative of all the asserted claims, which are "substantially similar and linked to the same abstract idea" and will rise and fall together in the eligibility analysis. *Content Extraction*, 776 F.3d at 1348. In addition to claim 10, Multimodal asserts claims 11-14 which all depend from claim 10. Cunningham Dec. at ¶2, Ex. A. These claims simply contain the same generalized language as claim 10 and are equally abstract.

data) as the limitations of claim 10, which are insufficient to provide an inventive concept for all

the reasons described above for claim 10. Similarly, claim 13 similarly recites the generic

function of transmitting data, adding only that the type of data transmitted includes a text

message, a voice message, or combination thereof. (*Id*. at 11:32-34.) Claim 14 recites the

additional limitation that the client application is provided on an operating system, which is

nothing more than a conventional, generic recitation that adds nothing inventive whatsoever. For

the same reasons described above, each and every one of the dependent claims fails to provide

any meaningful limitation that would provide an "inventive concept," and therefore are no more

patent-eligible than independent claim 10.

   **C.**     **The '227 Patent**

   **1.**     ***Alice* Step 1: The '227 Patent Is Directed to the Abstract Idea of
              Receiving and Transmitting Media, Control and Notification Data to
              Complete a Communication After An Incomplete Call**

Like the previous patents, the '227 patent is directed to an abstract idea related to the

mere handling of data, specifically, the abstract idea of receiving and transmitting media, control

and notification data to complete a communication after a missed call. For example,

representative claim 1 of the '227 patent recites receiving notification data related to a missed

call, allowing an operator to select completion data related to a certain action of completing the

call, recording and transmitting media data, and executing a call completion algorithm depending

on the selected completion data:

- "detecting said incomplete call made by said calling party to said called party, by
  said call completion application on said calling party device, wherein said
  incomplete call is a call that is not connected to a called party device due to
  occurrence of one or more of a plurality of events" – *this limitation merely
  describes receiving data related to failure to complete a call*

- "receiving one or more of a plurality of call completion actions to be performed
  by said call completion application on said calling party device to complete said
  detected incomplete call, wherein said plurality of call completion actions are

selected according to one or more responses provided by said calling party through a graphical user interface of said calling party device, wherein said call completion actions comprise setting a reminder to call back said called party at a configurable time, recording media data on said calling party device, transmitting said media data to a called party device, transmitting a missed call alert to said called party device, transmitting a notification of said detected incomplete call to said called party device, transmitting a notification on availability of said called party, transmitting said media data to a social networking platform, transmitting an automated message requesting said called party to call back said calling party when available, and any combination thereof" – *this limitation describes the basic function of receiving, recording and transmitting data (i.e., <u>receiving call completion action command data from a user, recording media on the sender's device, transmitting that media to the called device and third party server (social media network), and transmitting message data to the called device)</u>*

- "triggering execution of said received one or more of said call completion actions by said call completion application on said calling party device based on one or more of action execution criteria for said completion of detected incomplete call" – *this limitation merely describes executing the selected completion action*

('227 Patent at col. 23:31-59). At its core, this amounts to nothing more than detecting or receiving data regarding an incomplete call, then completing an action in response such as receiving, recording and transmitting data in order to complete the communication.

This idea is abstract, much like the claims found to be abstract and patent-ineligible in *Elec. Power*. The representative claim in *Elec. Power* claimed a method for "detecting events on an interconnected electric power grid in real time" and included the steps of "receiving" data from various sources, "detecting and analyzing" that data, and "accumulating and updating the measurements" from the data in order to "deriving a composite indicator of reliability." *Elec. Power,* 830 F.3d at 1351–52. Like the claims in *Elec. Power*, the method claimed in the '227 patent is also about collecting, detecting or receiving data (for example, detecting an incomplete call, much like the claim in *Elec. Power* detected events and data) and taking straight-forward actions based on the data collected, detected or received. It claims collecting basic metrics of wireless communication, such as data regarding an incomplete call, and then taking an action based on the data including such basic wireless communication functions as recording or

transmitting media, message or notification data. Such basic methods relating to receiving, transmitting and acting on data are abstract. *See, e.g.,* I*n re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 612; *Two-Way Media*, 874 F.3d at 1339; *Rothschild*, U.S. Dist. LEXIS 64121, at *15-16.

      2.    *Alice* **Step 2: The '227 Patent Adds Nothing Inventive to the Abstract Idea**

Both individually and as ordered combinations, the limitations of claim 1 of the '227 patent add no inventive concept to this abstract idea. It recites wholly generic functions – "detecting," "receiving," "recording," and "transmitting" data, for example – which can be performed by generic computers using generic wireless hardware. Implementing each of the steps that claim 1 requires does not require any improvements to pre-existing technology, and the minimal recited physical components, such as a processor or (in the case of claim 11) computer readable storage medium, are wholly routine and conventional as the specification of the '227 patent makes clear. (*See, e.g.*, '227 patent at 18:26-49 (stating that the "processor 601 refers to any one or more" of a list of generic processors, including "a general purpose microprocessor") and 12:47-49 ("the term "non-transitory computer readable storage medium" refers to all computer readable media").)

Moreover, multiple court decisions have confirmed that the well-understood, routine, and conventional nature of the generic computer functions similar to those addressed in the '227 claims (as well as the claims of the other asserted patents, as discussed above), emphasizing that functions such as "receiving" and "sending" data are "not even arguably inventive." *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("[t]hat a computer receives and sends the information over a network—with no further specification—is not even arguably inventive"); *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338 and 1343– 45 (Fed. Cir. 2013) ("transmit[ing] and receiv[ing]" is non-inventive); *Ultramercial*, 772

F.3d at 716–17. In short, neither the generic components nor the basic wireless communication functions described in the '227 patent amount to anything more than well-known, routine, and conventional activities previously known and thus do not impart any "inventive concept."[3]

**D.     The '030 Patent**

    **1.     *Alice* Step 1: The '030 Patent Is Directed to the Abstract Idea of Relating User Interface Regions to Data Sets and Taking Action Based on Received Data**

Similarly to the previous patents, the '030 patent is directed to the abstract idea of using software to allow a user to specify a certain set of data and taking an action based on that data. For example, representative claim 8 of the '227 patent is in Computer Readable Media (CRM) form and recites nothing more than relating user interface regions to data sets, receiving data from those regions based on user gestures, and taking actions based on the received data. In some instances, the action allows for changing the relation of the interface region to a different set of data and receiving data from a second gesture. In particular, representative claim 8 recites:

- "an interface definition module configured to define a plurality of interface regions on said graphical user interface of said electronic device" – *this limitation merely describes a software module that relates a region of an interface to a data set*

- "a detection module configured to detect a first gesture from among multiple gestures on a first of said defined interface regions, wherein said first gesture is a press and hold gesture" – *this limitation describes recording command data based on a gesture in the region*

---

[3] The remaining asserted claims are "substantially similar and linked to the same abstract idea" and will rise and fall together in the eligibility analysis. *Content Extraction*, 776 F.3d at 1348. These claims contain the same generalized language as claim 1 and are equally abstract. Further, the limitations of the remaining asserted claims are generic and fail to add any "inventive concept" to the abstract idea. For example, they merely recite events that constitute an incomplete call (claim 2), that the incomplete call is of short duration (claim 3), limitations regarding configuration of the calling party device (claims 5-7), types of media data (claim 8), modes of transmitting media data (claim 9), and monitoring an incomplete call (claim 10).

- "an action management module configured to start said recording of media data in a push to talk (PTT) recording mode, on said detection of said first gesture on said first of said defined interface regions" – *this limitation describes taking an action based on the data*

- "said interface definition module configured to dynamically change functions associated with said one or more defined interface regions based on said detected first gesture on said one of said defined interface regions" – *this limitation merely describes redefining the data set related to the interface region*

- "said detection module further configured to detect a second gesture from among said multiple gestures, wherein said second gesture is a slide and hold gesture, or a swipe and hold gesture from said first of said defined interface regions to a second of said defined interface regions proximate to said first of said defined interface regions, and wherein said recording of said media data continues uninterrupted during and after performance of said second gesture." – *this limitation merely describes taking actions based on new data from a second gesture*

('030 patent at col. 24:8-47.) Thus, at its core, the claim merely describes creating data sets, collecting data based on gestures, and comparing the collected data to the data sets to take some action based thereon. Moreover, the limitation "wherein said recording of said media data continues uninterrupted during and after performance of said second gesture" does not make the claim any less abstract, because this merely says that you continue the action from the first gesture. This is simply a software implementation of a choice to continue or change actions based on data. *See also, e.g., Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344-46 (Fed. Cir. 2018) (holding claims directed to an abstract idea of "displaying a second set of data without interfering with a first set of data").

Claim 8 of the '030 patent is also similar to the ideas for detecting, analyzing and organizing data found to be abstract and patent-ineligible in *Elec. Power*. The patent at issue there claimed a method for "detecting events on an interconnected electric power grid in real time" and included the steps of "receiving" data from various sources, "detecting and analyzing" that data, and then taking an action based on the data (i.e., "accumulating and updating the

measurements" from the data in order to "deriv[e] a composite indicator of reliability"). *Elec. Power,* 830 F.3d at 1351–52. Similarly, claim 8 of the '030 patent describes detecting or receiving data sensed from gestures, analyzing the data as compared to data sets that were created, and taking straight-forward actions based on the data detected or received. Such basic functions relating to receiving, detecting, analyzing, processing, and acting on data have repeatedly been found to be abstract. *See also* I*n re TLI Commc'ns LLC Patent Litig*., 823 F.3d at 612; *Two-Way Media*, 874 F.3d at 1339; *Rothschild*, U.S. Dist. LEXIS 64121, at *15-16; *Intellectual Ventures I*, 850 F.3d at 1330, 1327-28 (finding claims directed to creating in index or database and locating information in that database to be abstract and patent-ineligible).

### 2.    *Alice* Step 2: The '030 Patent Adds Nothing Inventive to the Abstract Idea

As with the other asserted patents, the limitations of claim 8 of the '030 patent add no inventive concept to its abstract idea. The asserted claims merely apply the abstract idea of setting data sets, detecting data based on gestures, and comparing the data and data sets in order to determine a responsive action – all of which can be performed by well-known, generic computer technology. The '030 patent does not describe or claim any specialized components or computer technologies for implementing this abstract idea. The claims instead recite generic computer components, such as a processor, non-transitory computer readable storage medium, and graphical user interface. (*See, e.g.*, '030 patent at 16:39-62 ("[t]he processor 82 refers to any one or more" of a list of generic processors, including "a general purpose microprocessor") and 20:5-7 ("the term "non-transitory computer readable storage medium" refers to all computer readable media").) The Federal Circuit has repeatedly rejected as non-inventive claims that recite similar generic components. *See, e.g., Fairwarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) ("non-transitory computer-readable medium" and "microprocessor"); *Affinity*

*Labs*, 838 F.3d at 1262 ("graphical user interface"); *Mortg. Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) ("interface," "network," and "database"); *Maxon, LLC v. Funai Corp., Inc.*, Case No. 2017-2139, 2018 WL 1719101, at *2 (Fed. Cir. Apr. 9, 2018) ("processor" and "computer-readable medium").[4]

## VI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR INFRINGEMENT OF THE ASSERTED CLAIMS OF THE '949 AND '978 PATENTS

### A.   Plaintiff's Claim for Infringement of the '949 Patent Should Be Dismissed Because Its Allegations On Their Face Require Multiple Actors and the Complaint Lacks Any Factual Allegations Whatsoever of Joint Infringement

Plaintiff's claim for infringement of the '949 patent should also be dismissed because the plain language of the claims as well as Plaintiff's own allegations require at least three different actors for infringement, yet Plaintiff fails to make a single allegation whatsoever in the Complaint required to support a joint or divided infringement claim. Plaintiff does not allege anywhere that any single actor performs all the steps of the only asserted independent claim, claim 1, nor can it.[5]

First, the plain language of claim 1 makes clear that this is the case. Claim 1 recites a method requiring, on its face, steps performed by at least three different actors: (1) a sender ('949 patent at col. 9:43-56)), (2) a server (*id.* at col. 9:57-59), and (3) a recipient (*id.* at col. 9:60-62). Second, Plaintiff's own allegations in the Complaint make clear that Plaintiff alleges that various

---

[4] The remaining asserted claims are "substantially similar and linked to the same abstract idea" and will rise and fall together in the eligibility analysis. *Content Extraction*, 776 F.3d at 1348. Nor do their additional limitations add any "inventive concept." They merely recite detecting a third gesture (claims 3 and 9), sending collected media data to a server via a network (claims 6 and 13), and describe types of media data (claims 7 and 14). None of these limitations offers anything inventive.

[5] Although the Complaint references only claim 11 of the '949 patent (*see, e.g.*, Comp., ¶22, Plaintiff has since served its Disclosures of Asserted Claims and Infringement Contentions which make clear that Plaintiff asserts claims 1-6, 7, and 9 of the '949 patent, but does not assert claim 11. Cunningham Dec., ¶2, Ex. A.

parts of the claim are performed by different actors. For example, with respect to direct infringement, Plaintiff alleges that "Defendant's products running the Google Android operating system *utilize a network server*…" Comp., ¶23 (emphasis added); *see also id.*, ¶22 ("using network servers"). Nowhere does Plaintiff allege that OPPO makes or operates a network server, but instead the allegations make clear that the server belongs to a third party (i.e. Google). Third, Plaintiff's recent Disclosure of Asserted Claims and Infringement Contentions further confirms that Plaintiff alleges that Google – not OPPO – performs at least one of the steps of the claimed method. Cunningham Dec., ¶2, Ex. A, Appx. A (for limitation 1B: "notifications are transmitted by the server, for example Google servers").

Although Plaintiff's allegations require at least three distinct entities to perform steps of the claimed method (i.e. a sender, server and recipient), Plaintiff fails to allege even a single conclusory statement in the Complaint, let alone sufficient facts, to support the required showing for joint infringement. To support a joint infringement claim, Plaintiff is required to allege facts suggesting that OPPO asserted "direction or control" over each of the multiple actors (including, for example, Google), who purportedly jointly perform the claimed methods. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016). This requires pleading facts that (1) the benefits of a particular service or product can be obtained only if the actor complies with instructions given by Plaintiff, and (2) the instructions direct the actor to perform acts that constitute recited steps in the asserted method claims. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015); *see also Travel Sentry v. Trapp*, 877 F.3d 1370, 1380 (Fed. Cir. 2017) ("[A] third party hoping to obtain access to certain benefits can only do so if it performs certain steps identified by the defendant, and does so under the terms prescribed by the defendant."). A "bare assertion," that Plaintiff "directs or controls" its customers "is insufficient to sustain a

theory of joint infringement." *Progme Corp. v. Comcast Cable Commc'ns LLC*, No. CV 17-1488, 2017 WL 5070723, at *10-11 (E.D. Pa. Nov. 3, 2017) (citing *Lyda*, 838 F.3d at 1340) (granting motion to dismiss joint infringement claims). There is not even a bare assertion here. Nowhere does Plaintiff allege any facts suggesting that OPPO, or any other purportedly infringing entity, performs every step of the claimed method or exercised the requisite direction or control over the purported steps.

This defect is fatal to all of Plaintiff's allegations of infringement of the '949 patent, both direct and indirect. The law is clear that there is no indirect infringement without a direct infringer. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[L]iability for inducement must be predicated on direct infringement."). With respect indirect infringement, Plaintiff vaguely identifies "network operators, server operators, OPPO's customers, and end-users." (Comp., ¶24). However, Plaintiff does not and cannot allege that any of these entities themselves performed every step of the claimed method, which by its very terms requires multiple actors (i.e., sender, server operator, and recipient). For example, the claim clearly requires users to perform certain steps, and another entity to perform other steps on a "server," and still a third entity to perform steps on a receiving mobile device. Moreover, Plaintiff fails to even mention, let alone sufficiently allege, that any of these various entities exercised "direction or control" over another. With no allegation that users perform the server-based or the recipient steps of the claimed methods, and no allegation that network or server operators perform the remaining steps, or that any entity directs or controls another, there is no allegation of direct infringement of the method claims by either OPPO or a third party, and thus no basis for a claim that OPPO contributes to or induces infringement.

Because Plaintiff's allegations of indirect infringement of the only asserted claims are incurably flawed, OPPO respectfully requests that they be dismissed with prejudice.

**B.      Plaintiff's Allegations Regarding the '978 Patent Admit Third Parties Are Required to Infringe the Asserted System Claims and Therefore Also Fail**

Direct infringement of a patented system requires that a party "put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017) (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). The party must therefore control and benefit from "each element" of the system, not merely one portion thereof. *Id*. at 1329; *see also Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021) ("Direct infringement by 'use' of a claimed system requires use of each and every element of the system."); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6-19-CV-00044-ADA, 2021 WL 1069047, at *5 (W.D. Tex. Mar. 18, 2021) (accused infringer cannot infringe system claim where it "neither controls each system component recited in [the claim] nor makes, sells, or offers to sell [all of] the claimed system."); *TecSec, Inc. v. Int'l Bus. Machines Corp.*, 769 F. Supp. 2d 997, 1010 (E.D. Va. 2011), aff'd, 466 F. App'x 882 (Fed. Cir. 2012), and rev'd on other grounds, 731 F.3d 1336 (Fed. Cir. 2013) (citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 (Fed. Cir. 2000)) ("To prove that [defendant] directly infringed the system claims, plaintiff must show that [defendant] made, used, sold, offered for sale, or imported the entire claimed system(s).").

Plaintiff asserts only system claims of the '978 patent, specifically, independent claim 10 and claims 11-14, which are dependent on claim 10. Comp., ¶32; Cunningham Dec., ¶2, Ex. A (Multimodal's Disclosure of Asserted Claims and Infringement Contentions). Claim 10 recites limitations requiring both a mobile device and a server ('978 patent at col. 11:12-26 (including

- 33 -

"a server for remotely recording and storing said voice messages of the user…")). In the Complaint, Plaintiff alleges that "Defendant's products use a server to remotely record and store voice messages and provide access to the recipients" Comp., ⁋34. Similarly, in its infringement contentions, Plaintiff alleges that Google – not OPPO – provides the claimed server. Cunningham Dec., ⁋2, Ex. A, Appx. B (for limitation 10D: "For example, Messages user voice messages are recorded and stored on one or more servers, including Google servers, which are accessed by recipients for listening to the voice messages.").

It is clear from Plaintiff's own allegations (even accepted as true, which they are not) that OPPO does not provide or control the entire claimed system, nor does Plaintiff allege that it does. Plaintiff fails to make any allegations whatsoever regarding the requirements for infringement of a claimed system that includes components from multiple parties. For example, among other deficiencies, Plaintiff does not allege that OPPO or any other entity controls each and every element of the claimed system, nor that OPPO or any other entity benefits from each and every element of the claimed system.

## VIII.   CONCLUSION

For at least these reasons, OPPO respectfully requests that the Court dismiss Multimodal's Complaint with prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. Rule 12(b)(6).

Dated: August 1, 2022

Respectfully submitted,

*/s/ Melissa Richards Smith*
Melissa Richards Smith
State Bar No. 24001351
Email: melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Steven A. Moore
Nicole S. Cunningham
Moore IP Law PC
4321 Balboa Ave, Suite 404
San Diego, CA 92117
(760) 807-8651
steve@mooreiplaw.net
nicole@mooreiplaw.net

**ATTORNEYS FOR DEFENDANT
GUANGDONG OPPO MOBILE
TELECOMMUNICATIONS CORP.,
LTD.**

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 1st day of August 2022, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/Melissa R. Smith*
Melissa R. Smith


**CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 11 MOTION PRACTICE ORDER**

\_\_\_\_\_   The parties agree that prior claim construction is not needed to inform the Court's analysis as to patentability.

\_\_X\_\_   The parties disagree that prior claim construction is not needed to inform the Court's analysis as to patentability.


*/s/Melissa R. Smith*
Melissa R. Smith