**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MULTIMODAL MEDIA LLC, | ) | Case No. 2:21-cv-00436-JRG-RSP |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| GUANGDONG OPPO MOBILE | ) | |
| TELECOMMUNICATIONS CORP., LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF MULTIMODAL MEDIA LLC'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.     THE PATENTS-IN-SUIT ................................................................................................ 1

    A.    The '949 Patent ................................................................................................ 1

    B.    The '978 Patent ................................................................................................ 1

    C.    The '116 Patent ................................................................................................ 2

    D.    The '227 Patent ................................................................................................ 2

    E.    The '030 Patent ................................................................................................ 3

II.    LEGAL STANDARDS ................................................................................................ 3

III.   DISPUTED TERMS ................................................................................................... 5

    A.    "interactive multimodal message" ('949 Patent, claims 1, 2, 4, 9; 10, 11, and 17) ......................................................................................................... 5

    B.    "service information" ('949 Patent, claims 1 and 5) ............................................... 6

    C.    "client application" ('949 Patent, claim 1) ........................................................... 7

    D.    "voice short message service" ('978 Patent, claim 10) ............................................. 8

    E.    "client application" ('978 Patent, claims 10, 13, and 14) ........................................ 8

    F.    "wherein the client application transmits one of a text message, a voice message, and a combination thereof" ('978 Patent, claim 13) .......................... 8

    G.    "detecting said incomplete call made by said calling party" ('227 Patent, claim 1) ........................................................................................................ 11

    H.    "wherein said call completion actions comprise setting a reminder to call back said called party at a configurable time, recording media data on said calling party device, transmitting said media data to a called party device, transmitting a missed call alert to said called party device, transmitting a notification on availability of said called party, transmitting said media data to a social networking platform, transmitting an automated message requesting said called party to call back said calling party when available, and any combination thereof" ('227 Patent, claims 1 and 11) ............................. 12

    I.    "one of text data, audio data, video data, audiovisual data, image data, multimedia data, message data, and any combination thereof" ('227 Patent, claims 8 and 17) .............................................................................. 14

i

J.      "interface regions" ('030 Patent, claims 1, 2, 8, and 9) ........................................ 15

K.      "gesture based media recording application" ('030 Patent, claims 1, 2, 6, 8, and 13) ................................................................................................................. 16

L.      "[detecting/detect] a [first/second/third] gesture" ('030 Patent, claims 1, 2, 8, and 9) ............................................................................................................... 17

M.      "interface definition module" ('030 Patent, claim 8) ........................................... 18

N.      "detection module" ('030 Patent, claim 8) .......................................................... 20

O.      "action management module" ('030 Patent, claim 8) ........................................... 22

IV.     CONCLUSION ................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*August Tech. Corp. v. Camtek, Ltd.*,
    655 F.3d 1278 (Fed. Cir. 2011)..................................................................................3

*Celgene Corp. v. Peter*,
    931 F.3d 1342 (Fed. Cir. 2019)............................................................................9, 15

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)..................................................................................5

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014)..................................................................................4

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
    99 F.3d 1098 (Fed. Cir. 1996)....................................................................................9

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)......................................................................................3

*Mars Inc. v. H.J. Heinz Co.*,
    377 F.3d 1369 (Fed. Cir. 2004)..................................................................................9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...........................................................3, 4

*Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*,
    989 F.3d 1002 (Fed. Cir. 2021)..................................................................20, 22, 24

*SynQor, Inc. v. Artesyn Tech., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013)..................................................................................4

*Thorner v. Sony Comput. Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)..................................................................................4

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)....................................................................... *passim*

**Statutes**

35 U.S.C. § 112 ¶ 6.................................................................................................... *passim*

Pursuant to the Court's First Amended Docket Control Order (Dkt. 36), Plaintiff Multimodal Media LLC ("Multimodal" or "Plaintiff") hereby submits its Opening Claim Construction Brief. The asserted patents are U.S. Patent Nos. 7,929,949 (the "'949 patent") (attached as Exhibit A), 8,107,978 (the "'978 patent") (attached as Exhibit B), 9,185,227 (the "'227 patent") (attached as Exhibit C), 10,552,030 (the "'030 patent") (attached as Exhibit D), and 8,161,116 (the "'116 patent") (attached as Exhibit E), (together, the "Asserted Patents"). However, only terms from the '949, '978, '227, and '030 patents are subject to claim construction disputes.

## I.   THE PATENTS-IN-SUIT

### A.   The '949 Patent

The '949 patent, titled "Interactive Multimodal Messaging," generally relates to methods and systems "to enable a recipient to interact with an interactive multimodal message triggered on the recipient's mobile device." Ex. A, Abstract.  The patent describes that a client application is used to create the multimodal message on the sending device, and the message is then stored on a server which sends a notification to the recipient's mobile device. *Id.*  The specification describes problems existing in the art regarding conventional messaging systems, including that: (1) text messages had no interactivity; (2) there was limited interactivity in multimedia messages; (3) the interactivity with voicemail messages was limited to on-server actions; and (4) text-based service selection was also not interactive (a non-interactive text was used to convey the user's choice). *Id.*, 1:33-59.

### B.   The '978 Patent

The '978 patent, titled "Addressing Voice SMS Messages," generally relates to a method and system "for allowing voice short message service (SMS) messaging using methods of recipient addressing as used by text SMS Messaging." Ex. B, Abstract.  The patent describes that a sender creates an SMS message using a client application and includes a voice message.  The application

sends the SMS message to the recipient with a notification of the voice message stored on a server. *Id*.  The specification describes the problem existing in the art regarding voice SMS systems is that existing methods of voice SMS did not allow the sender to practically use addresses stored in a local address book in the mobile device for selecting recipients to integrate voice content with text messages.  *Id.*, 1:61-64.

### C.   The '116 Patent

The '116 patent, titled "Method and System for Communicating a Data File Over a Network," generally relates to a method and system "for forwarding information such a data files to a recipient across disparate or incompatible communication networks."  Ex. E, Abstract.  The patent describes that a sender sends a data file to a server.  The server automatically creates a notification message and, at a later time, sends the notification to the recipient which causes the recipient to retrieve the data file. *Id.*, 6:54-62.  The specification describes problems existing in the art regarding conventional data file communication, including: (1) not all modern cellular devices have MMS capabilities; (2) other modern cellular devices do not have MMS enabled; (3) the sender cannot be certain that the recipient has the appropriate device on the appropriate network that is enabled to receive the MMS message; and (4) various message and file types are not compatible with certain networks and certain devices. *Id.*, 2:15-34.

### D.   The '227 Patent

The '227 patent, titled "Sender Driven Call Completion System," generally relates to a method and system "for completing an incomplete call made by a calling party to a called party" by providing "a call completion application on a calling party device." Ex. C, Abstract.  The patent describes that a call completion application on a caller's device detects an incomplete call, determines call completion actions, and triggers execution of the determined call completion actions. *Id*.  The specification describes problems existing in the art regarding conventional call

completion systems, including that (1) conventional call completion systems require preconfigured establishment of a call completion feature on the called party's network; and (2) the calling party does not get any other choices other than to leave a message or manually send a text message. *Id.*, 1:20-43.

### E.    The '030 Patent

The '030 patent, titled "Multi-Gesture Media Recording System," generally relates to methods and systems that allow a user of a smartphone to use gestures associated with various actions associated with actions such as recording media data.  Ex. D, Abstract.   The patent describes that a first gesture is detected in a gesture-based media recording application to begin recording of media data, the user interface changes based on the detected first gesture, and a second gesture is detected during the recording of the media data which is associated with a second action. *Id*.  The specification describes problems existing in the art regarding conventional gesture-based media recording (such as push-to-talk, tap-to-start, release-to-record, and tap-to-end) including that there is no way to switch between communication modes for recording the media data, cancel recording of the media data, or to perform any other action associated with the media data at any time during and/or after the recording. *Id*., 2:38-49.

## II.   LEGAL STANDARDS

Claim construction is a question of law to be decided by the Court.  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995).  In construing claim terms, courts begin with an examination of the claim language itself.  *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011).   The terms used in the claims are generally given their "ordinary and customary meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citations omitted).  This is the meaning as understood by a person of ordinary skill in the art at the time of the invention. *Id.* at 1313.  "There are only two exceptions" to the general rule that a

claim term is given its plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *accord Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("We depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal."). Accordingly, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit] ha[s] repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. That being said, a construction that excludes a preferred embodiment is "rarely, if ever, correct." *SynQor, Inc. v. Artesyn Tech., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013)

Under 35 U.S.C. § 112 ¶ 6, a patentee may draft claims "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." But such claims are construed to cover only "the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015). To determine whether § 112 ¶ 6 applies to a claim limitation, the court must inquire "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* at 1349. If those words lack a sufficiently definite meaning, § 112 ¶ 6 applies. If the limitation uses the word "means," there is a rebuttable presumption that § 112 ¶ 6 applies. *Id.* at 1348-49. If not, there is a rebuttable presumption that the provision does not apply. *Id.* But that "presumption can be overcome and § 112 para. 6 will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 1348.

## III.     DISPUTED TERMS

### A.     "interactive multimodal message" ('949 Patent, claims 1, 2, 4, 9; 10, 11, and 17)

| Term | Multimodal's Construction | OPPO's Construction |
|------|---------------------------|---------------------|
| "interactive multimodal message" | "a message containing two or more forms of dynamic content that enables responsive communication" | "an interactive, seamless combination of graphics, text, and audio output or a combination of the above modalities with speech, text, and touch input or vice-versa having no awkward transitions, interruptions, or indications of disparity" |

The '949 patent provides that "[t]ext messages have a maximum character limit for every message; therefore the amount of information transmitted as a text message may be limited. Furthermore, the content of the text messages is limited to plain text without visual enhancements or interactivity." Ex. A, 1:31-35. One proposed solution to this problem is a system that enables "a recipient to interact with an interactive multimodal message comprising interactive dynamic content triggered on a mobile device." *Id.*, 2:6-8. The specification also defines a "multimodal message" as "a seamless combination of graphics, text, and audio output or a combination of the above modalities with speech, text, and touch input or vice versa." *Id.*, 3:11-13.

Defendant's construction is based upon this lexicography for "multimodal message," but adds the statement that it has "no awkward transitions, interruptions, or indications of disparity." This language is superfluous, vague, likely indefinite, and has no basis in the patent or file history. Whether a transition or interruption is "awkward" is subjective based on the user, and such broad subjective language is of no help to the jury in understanding the scope of the claim. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1355-56 (Fed. Cir. 2005) (affirming grant of

summary judgment that claim term "aesthetically pleasing" is subjective and indefinite). Therefore, Defendant's construction is improper.

Plaintiff's construction provides clarification for the additional term "interactive," which is merely parroted back in Defendant's construction. Plaintiff's construction makes clear that the interactivity requirement is that the message "enables responsive communication." This is consistent with the specification, which describes that "[t]he recipient 205 interacts with the triggered interactive multimodal message." Ex. A, 5:33-34. The '949 patent goes on to describe examples of such interaction. *Id.*, 5:34-40. The "two or more forms of content" language in Plaintiff's construction is a compact version of the description of the multimodal message in the specification. Further, the list of potential "modes" in Defendant's construction is less than complete, because the specification also describes that the multimodal message may be "web based scripted interfaces." *Id.*, 4:5-9. Therefore, Plaintiff's proposed definition should be adopted.

### B. "service information" ('949 Patent, claims 1 and 5)

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "service information" | "content information a recipient can interact with including but not limited to, advertisements, alerts, stored audio files, and image previews" | "service-related content information" |

Claims 1 and 5 of the '949 patent require "transmitting service information to the mobile device of the recipient . . ." and "wherein said transmitted service information provides the recipient with one or more options . . .". Multimodal's proposed construction properly elucidates the scope of the claim term by clarifying that it is content information that the recipient can interact with and providing a non-limiting list of examples. OPPO's construction, on the other hand, merely adds that the content is "service-*related*," which is not meaningful nor helpful to a jury.

The specification of the '949 patent describes, in the Summary of the Invention section, that "[t]he transmitted service information may provide the recipient with one or more options . . ." and "[s]ervice content may be transmitted based on the selected option from the sender to the mobile device of the recipient." Ex. A, 2:27-35.  And, in the Detailed Description, the specification provides that the service information "is transmitted to the mobile device of the recipient through the triggered interactive multimodal message." *Id.*, 4:36-38.  The recipient, therefore, "can interact" with this content information, as specified in Multimodal's proposed construction.  And the non-limiting list of examples, also from the specification, would assist the jury in understanding what the claims mean by "service information." *Id.*, 4:38-43 ("[t]he transmitted service information may, for example, comprise advertisements, alerts, or service content previews."); ("transmitted service information may provide the recipient with one or more options, and the recipient may select one of the provided options"). *Id*. The patent provides at least two examples of service content, including hourly weather updates or a daily horoscope readings. *Id*., 4:48-49.  A weather update preview may be a brief interactive multimodal message with an additional option to subscribe to the weather update service. *Id*., 7:50-61.  Because the specification contemplates the presentation of a multimodal "preview," which may be a stored audio file or image, Plaintiff's construction properly captures the scope of the claim.

### C.    "client application" ('949 Patent, claim 1)

| Term | Multimodal's Construction | OPPO's Construction |
|------|---------------------------|---------------------|
| "client application" | "a program present on the sender's mobile device" | Needs no construction; plain and ordinary meaning |

The parties have reached agreement that "client application" shall be construed to mean "a program present on the sender's mobile device."

### D. "voice short message service" ('978 Patent, claim 10)

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "voice short message service" | Multimodal agrees with Oppo that this term needs no construction. | Needs no construction; plain and ordinary meaning |

Plaintiff agrees that "voice short message" service in claim 10 needs no construction.

### E. "client application" ('978 Patent, claims 10, 13, and 14)

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "client application" | "a program present on the sender's mobile device" | Needs no construction; plain and ordinary meaning |

The parties have reached agreement that "client application" shall be construed to mean "a program present on the sender's mobile device."

### F. "wherein the client application transmits one of a text message, a voice message, and a combination thereof" ('978 Patent, claim 13)

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "wherein the client application transmits one of a text message, a voice message, and a combination thereof" | Plain and ordinary meaning | Indefinite |

Claim 13 of the '978 patent depends from claim 10, which includes "a client application on a mobile device, wherein said client application integrates voice content to a text message . . . ." Claim 10 further defines the functionality of the client application, requiring that the client application "transmits one of a text message, a voice message, and a combination thereof." Defendant argues that this term is indefinite, as a "logical contradiction" prevents the POSITA from understanding this claim. According to Defendant's expert "A POSITA would not understand whether the client application is indeed limited to transmitting *one of* or could transmit *more than one of* which is a combination within the scope of 'a combination thereof.'" Jan. 20, 2023 Dr. George Edwards Decl., ¶ 50 (attached as Exhibit H) (emphasis in original). But the claim

language itself is clear: the transmission of a text message, or a voice message, or the combination of both text messages and a voice messages satisfies the limitation.   Jan. 20, 2023 Joseph C. McAlexander, III Decl., ¶ 32 (attached as Exhibit G).

Independent claim 10 uses the open-ended transition phrase "comprises," meaning that the claim does not exclude unrecited elements.   *Mars Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004).   Therefore, the "one of" language in claim 13 is not limited to *only* one of, but necessarily means *one or more of* when read in combination with the open-ended transition phrase. Defendant provides no reason to depart from the "general rule" that one means more than one. *Cf. Celgene Corp. v. Peter*, 931 F.3d 1342, 1350 (Fed. Cir. 2019) (exceptions to the "general rule that 'a' or 'an' means more than one arise only when the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule.") (internal quotation omitted).   The Federal Circuit has limited "one" to mean "only one" before, but only under conditions not present here.   In *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996), the court held that a claimed "cup connected by a flexible hose to a vacuum source" was construed to mean "one and only one vacuum cup." *Id.* at 1104-05.   This was based upon the specification, which continuously and repeatedly disclosed the use of a single cup, both in the description and in the figures. *Id.*   The claim was also construed to be limited to "only one" because adding elements would eliminate an inherent feature of the claim, a discontinuous vacuum. *Id.* Here, there are no such reasons to depart from the general rule and the specification supports Multimodal's interpretation.

The specification of the '978 patent also makes clear to the POSITA that the intercepted SMS text message can additionally have a voice message added to it:

> In order to integrate 104 the text SMS message with voice content,
> the client application 201 a intercepts 104 a the addressed text SMS

message. The client application 201 a then prompts 104 b the user
202 as to whether a voice SMS message needs to be included. *If the
user 202 prefers not include a voice SMS message, the client
application 201 a sends the intercepted text SMS message to the
recipient.* **If the user 202 prefers to additionally add a voice SMS
message, the client application 201 a connects the mobile device
201 to a server 314.** The user's voice message is recorded and stored
on the server 314.

Ex. B, 3:42-52 (emphasis added).  The specification also provides an additional example of the

system transmitting a combination a text message and a voice message:

> The addressed text SMS message is intercepted by the client
> application 201 a on Alice's mobile device. The client application
> 201 a prompts Alice on her mobile device display, 'Do you want to
> add a voice message?' Alice selects the 'Yes' option, using the user
> interface 201 c on her mobile device. The client application 201 a
> connects the mobile device to a server 314 through a wireless
> network interface. Alice speaks on her mobile device, and her voice
> is recorded at the server 314. In addition, the addressed text message
> is sent to the server 314.

*Id.*, 4:64-5:6.  The specification is additionally replete with references to the client application

transmitting both a text and voice message, or only one of a text or voice message.  *See, e.g., Id.,*

1:36-2:32; 7:39-43 ("If the user 202 chooses to send a text message without including a voice

message, a test message is sent to the recipient as a normal text message 405b.")  Figures 4 through

7 additionally confirm the POSITA's understanding that voice message may be added to the SMS,

or the SMS may be sent on its own:

10



**FIGURE 4**

The POSITA, reading claim 13, in light of the specification, would understand that there is no "logical inconsistency," and that the claim is not indefinite and should be entitled to its plain meaning.  Ex. G, ¶¶ 35-36.

### G.    "detecting said incomplete call made by said calling party" ('227 Patent, claim 1)

| Term | Multimodal's Construction | OPPO's Construction |
|------|---------------------------|---------------------|
| "detecting said incomplete call made by said calling party" | Multimodal has agreed with Oppo's proposed construction. | Needs no construction; plain and ordinary meaning |

Multimodal agrees that this term requires no construction and should be accorded its plain meaning.

**H.**   **"wherein said call completion actions comprise setting a reminder to call back said called party at a configurable time, recording media data on said calling party device, transmitting said media data to a called party device, transmitting a missed call alert to said called party device, transmitting a notification on availability of said called party, transmitting said media data to a social networking platform, transmitting an automated message requesting said called party to call back said calling party when available, and any combination thereof" ('227 Patent, claims 1 and 11)**

| Multimodal's Construction | OPPO's Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite |

Defendant's indefiniteness position here is two-pronged: first, that the "any combination thereof" language is confusing to the POSITA and logically inconsistent and, second, that certain of the recited call completion actions either cannot be combined or do not result in a completed call.  Both of these arguments fail, and the claim is definite and entitled to its plain and ordinary meaning.

Claims 1 and 11 of the '227 patent both recite this element.  Each claim requires receiving "one or more of a plurality of call completion actions."  Ex. C, 23:36, 24:66-67.  The claim language and specification make clear that any one of the recited call completion actions meets the claims, and also any combination of call completion actions also meets the claims.  The "one or more of" claim language, combined with the open ended "comprising" transitional phrase and the "any combination thereof" language make the scope of the claims clear to the POSITA, who would accord them their plain meaning.  Ex. G, ¶¶ 38-39.

Defendant also appears to argue that this claim is indefinite because certain of the recited call completion actions, on their own, do not result in a completed call.  For example, Defendant's claim construction expert states "this limitation includes nonsensical combinations such as 'transmitting said media data to a called party device' but not 'recording media data.'"  Ex. H, ¶ 55.  This position is derived from a fundamental misunderstanding of claim interpretation, and

an unduly narrow reading of the phrase "call completion action."  Dr. Edwards first ignores the

"any combination thereof" language, which means that both recording and transmitting media data

would fall within the scope of the claim.  And, if for some reason the calling party device received

media data that it did not itself record, the mere transmission of this media data would also fall

within the scope of the claim.  Defendant also takes a narrow and unsupported view of the "call

completion actions" themselves, apparently requiring each action, individually, to result in a

completed call.[1]  But there is nothing in the claim or specification that requires the "call completion

actions" to each complete a call.  The claim defines "setting a reminder to call back said called

party at a configurable time" as a call completion action, because such a reminder will result in a

higher likelihood that the calling party tries the call again at the designated time.

The specification of the '227 patent supports this interpretation:

> The method and the system disclosed herein address the above
> stated need for completing an incomplete call made by a calling
> party to a called party *by executing a call completion action, for*
> *example, one that leads to setting up a reminder, or one that leads*
> *to transmitting a voice message, a text message, a missed call alert,*
> *a notification of a call attempt, other calling party driven messages,*
> *etc., to the called party, etc.,* independent of a preconfigured call
> completion service on the called party's network or a called party
> device, and *for providing a sender, that is, the calling party the*
> *option to drive or trigger execution of the call completion action*.

Ex. C, 2:5-16. (emphases added).  Figure 5 provides a non-limiting list of call completion actions:

---

[1] Defendant's counsel repeatedly questioned Plaintiff's expert during deposition regarding whether certain of the recited elements, such as recording media data on the calling party device, resulted in a completed call.  Feb. 14, 2023 McAlexander Tr., 46:2-54:3 (attached as Exhibit F).  This line of questioning is not relevant to the scope of the claims, as there is no support for the underlying proposition that each call completion action must result in a completed call without additional steps.

LIST OF CALL COMPLETION ACTIONS AVAILABLE TO THE
CALLING PARTY:

1. SEND A TEXT MESSAGE
2. SEND A VOICE MESSAGE
3. SEND A VIDEO MESSAGE
4. SEND A PRE-RECORDED MESSAGE
5. SEND A MISSED CALL ALERT
6. BE ALERTED WHEN THE CALLED PARTY IS AVAILABLE
7. ADD TO REMINDER
8. ADD TO CALENDAR
9. SEND A DIRECT MESSAGE ON TWITTER
10. POST TO THE CALLED PARTY'S FACEBOOK PAGE
11. SEND A PRIVATE CHAT MESSAGE TO THE CALLED
    PARTY'S FACEBOOK IDENTITY

**FIG. 5**

Even if the "call completion actions" are limited to the examples in the specification, which neither party advocates for, several of the enumerated call completion actions in the specification do not, on their own, result in completed calls.  Therefore, Defendant's and Dr. Edwards' interpretation of the "call completion actions" is overly narrow and incorrect.  The claim properly defines each of the enumerated actions as "call completion actions," and each of the actions requires no construction and should be accorded its plain meaning.

I.    **"one of text data, audio data, video data, audiovisual data, image data, multimedia data, message data, and any combination thereof" ('227 Patent, claims 8 and 17)**

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "one of text data, audio data, video data, audiovisual data, image data, multimedia data, message data, and any combination thereof" | Plain and ordinary meaning | Indefinite |

Defendant's indefiniteness argument for this phrase mirrors the two prior "and any combination thereof" terms.  *See supra* Section IV.F and Section IV.H.  For the same reasons as above, this phrase is not indefinite because the POSITA would have understood that an occurrence of one of the claimed types of media data satisfies the claim, and also that any combination of the recited elements also satisfies the claim.  Ex. G, ¶¶ 45-47.  Claims 8 and 17 of the '227 patent each state that the media data "comprises one of . . ." the enumerated types of media data, and such claiming complies with the general rule that the claim should not be limited to "only one" of the claimed list unless the specification or prosecution history provide the court with a clear reason to do so.  *Cf. Celgene Corp.*, 931 F.3d at 1349.

**J.**     **"interface regions" ('030 Patent, claims 1, 2, 8, and 9)**

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "interface regions" | "areas provided on the GUI of an electronic device that enable interfacing and interactions with a user of the electronic device" | "sections of a user interface that are configurable to display control icons and are responsive to physical gestures" |

Although the proposed constructions are similar, Defendant's construction is overly narrow because it requires that the interface regions display "control icons."  The patentee chose to act as his own lexicographer with respect to this term, stating "[a]s used herein, the term 'interface region' refers to an area provided on the GUI of an electronic device that enables interfacing and interactions with a user of the electronic device." Ex. D, 3:52-55.  Plaintiff's proposed construction is consistent with this lexicography, with minor edits to reflect that the claim term "interface regions" is plural.

Aside from ignoring clear lexicography, Defendant's proposed construction is incorrect for several other reasons.  First, it is unduly narrow as requiring the display of "control icons" and only requiring the interface to be responsive to "physical gestures."  Second, it adds the superfluous

term "configurable" to the phrase.  Because the patentee's lexicography controls, Multimodal's

proposed construction should be adopted.

### K.   "gesture based media recording application" ('030 Patent, claims 1, 2, 6, 8, and 13)

| Term | Multimodal's Construction | OPPO's Construction |
|------|---------------------------|---------------------|
| "gesture based media recording application" | Plain and ordinary meaning | "an executable program which receives control and actuation commands from physical actions on a user interface, the executable program operational within a runtime environment and configured to record audio, video, imagery, and text" |

The claimed "gesture based media recording application" is not confusing, is not a term of

art, is not subject to any estoppel or lexicography, and has no basis to be construed aside from

Defendant's attempt to narrow the claim to make Plaintiff's proofs more difficult and more

expensive, and to back-door a non-infringement position where none exists.   Defendant's

construction is overly narrow and superfluous and should be rejected.

First, Defendant's construction is improper because it specifies that the application

"receives control and actuation commands from physical actions on the user interface."   The

receipt of these commands is already specified elsewhere in the claims.   For example, claim 1

contains a separate step of "detecting a first gesture from among multiple gestures on a first of said

defined interface regions."   Defining this method step into other parts of the claim merely creates

duplicative, confusing language.   Second, Defendant's construction is improper because it limits

the gesture-based media recording application to a "program operational within a runtime

environment."   The intrinsic record makes no mention of a "runtime environment," and there is no

basis to limit the term in this way.   The specification specifically provides that the computer

programming languages that can be used "comprise C, C++, C#, Objective-C, Java®, JavaScript®, Fortran, Ruby, Pascal, Perl®, Python®, Visual Basic®, etc.  Other object-oriented, functional, scripting, and/or logical programming languages may also be used.  The computer program codes or software programs may be stored on or in one or more mediums as object code.  Various aspects of the method and system disclosed herein may be implemented as programmed elements, or non-programmed elements, or any suitable combination thereof."  Ex. D, 21:55-64.  Because Defendant's proposed construction is overly narrow, confusing, and incorrect, Plaintiff's plain meaning construction should be adopted.

**L.**     **"[detecting/detect] a [first/second/third] gesture" ('030 Patent, claims 1, 2, 8, and 9)**

| Term | Multimodal's Construction | OPPO's Construction |
|------|---------------------------|---------------------|
| "[detecting/detect] a [first/second/third] gesture" | Plain and ordinary meaning | "changing the state of a software component based on sensing a physical touch or motion on a user interface" |

These claim terms are not terms of art, are not subject to lexicography, and are not the subject of any prosecution history.  Because they are also not confusing to a jury, no construction is necessary.  Defendant seeks to add computer science terminology regarding "changing the state of software" in an attempt to confuse the jury and provide a more complicated definition of easily-understandable terms.  Further, Defendant's construction is overly narrow, limiting the gestures to "physical touch or motion on a user interface."  Gestures are not so limited in the specification, which provides that gestures are "user action or an actuation by a user performed manually, for example, by use of a finger, a thumb, a hand, etc., on the GUI, *or by using an input device*, for example, a physical button, a computer mouse, a pointing device, a light pen, a touch pad, a touch sensitive display device, a track ball, a pointing stick, any device capable of sensing a tactile input,

etc." Ex. D, 6:42-48.  Because Defendant's construction is unduly narrow and not necessary, the plain and ordinary meaning should be adopted.

### M.    "interface definition module" ('030 Patent, claim 8)

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "interface definition module" | Not subject to 112, p. 6<br><br>Plain and ordinary meaning | Function: defining a plurality of interface regions on said graphical user interface of said electronic device<br><br>Structure: A software component of the gesture based media recording application configured to define multiple interface regions on the graphical user interface and associate a predefined function with each of the defined user interface regions. The interface definition module further configured to dynamically chance [sic.] the functionality of the interface regions to a different predefined function. [FIG. 8, 15: 21 – 36] |

Claim 8 of the '030 patent requires an "interface definition module configured to detect a first gesture from among multiple gestures on a first of said defined interface regions, wherein said first gesture is a press and hold gesture."  Because the claim does not use the phrase "means for," there is a presumption that 35 U.S.C. § 112 ¶ 6 does not apply.  *Williamson*, 792 F.3d at 1349. And here, both experts agree that the "interface definition module" recites sufficiently definite structure, 112 ¶ 6 does not apply.

According to Mr. McAlexander, the interface definition module "is the name of a specific structure" that is "part of the media recording application."  Ex. G, ¶ 50.  This specific structure is a software program module stored on a memory, and it is "well-established in programming that

a software module is a section of code dedicated to a specific function.  When that module of code is instantiated in a device, it is stored in memory as part of the program application." *Id.*  Mr. McAlexander also notes that the interface definition module is a substructure of the claimed "gesture based media recording application."  Since the gesture based media recording application is not subject to § 112 ¶ 6, "the substructures are similarly not subject to 112 ¶ 6." *Id.*, ¶ 51.  Finally, Mr. McAlexander opines that the gesture-based media recording application, of which the interface definition module is a part, "must include structure which comprises a configurable touch screen GUI . . . and/or the I/O [input/output] between the touch screen and the software, otherwise the interface definition module will have nothing to define." *Id.*, ¶ 52.

According to Dr. Edwards, "[i]n my opinion a POSITA would understand that the word 'module' in this context would refer to a software component resident in the client application that manages the user interface." Ex. H, ¶ 63.  In other words, in this instance, the term "module" is not a nonce term but rather a specific software component.  Dr. Edwards does not appear to state an affirmative opinion that the "interface definition module" is subject to § 112 ¶ 6.

The specification describes that:

> The media recording application 801 comprises an interface definition module 801 *a*, a detection module 801 *b*, a media recording module 801 *c*, and an action management module 801 *d*. The interface definition module 801 *a* defines multiple interface regions 301 on the GUI 302 of the electronic device 303 as exemplarily illustrated in FIGS. 3A-3D, FIGS. 4A-4D, and FIGS. 6A-6E. The interface definition module 801*a* further associates a predefined function from multiple predefined functions with each of the defined interface regions 301 on the GUI 302 as disclosed in the detailed description of FIGS. 3A-3D and FIGS. 4A-4D. The interface definition module 801 a also dynamically changes the predefined function associated with one of the defined interface regions 301 to another one of the predefined functions based on one or more communication modes and user preferences. In an embodiment, the interface definition module 801 a configures predefined functions for one or more defined interface regions 301 based on the user's preferences as disclosed in the detailed description of FIG. 5.

Ex. D, 15:18-37.

Defendant may rely on *Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002, 1006 (Fed. Cir. 2021), for the proposition that "module" is a nonce term and, thus, the claim is drafted functionally.  But that case has several important differences from the instant situation. First, there was no agreement among the experts that the claim recited structure.  And second, there was no contention in that case that the "user identification module" was software.

Should the Court disagree with Plaintiff and both experts regarding the recitation of structure and find that the claimed "interface definition module" is subject to 112 ¶ 6, Plaintiff agrees with the structure and function proposed by OPPO, with the addition of "and equivalents thereof."

### N.  "detection module" ('030 Patent, claim 8)

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "detection module" | Not subject to 112, p. 6<br><br>Plain and ordinary meaning | Function: detecting a first gesture from among multiple gestures on a first of said defined interface regions, wherein said first gesture is a press and hold gesture<br><br>Structure: A software component of the gesture based media recording application configured to detect one or more physical touch or other gesture on a defined region of a graphical user interface. [FIG 8, 15: 38 – 48] |

Claim 8 of the '030 patent requires "a detection module configured to detect a first gesture from among multiple gestures on a first of said defined interface regions, wherein said first gesture is a press and hold gesture."  Because the claim does not use the phrase "means for," there is a

presumption that 35 U.S.C. § 112 ¶ 6 does not apply.  *Williamson*, 792 F.3d at 1349.  And here, both experts agree that the "detection module" recites sufficiently definite structure, § 112 ¶ 6 does not apply.

According to Mr. McAlexander, the "detection module" is identified and described "as a specific structure that is part of the media recording application." Ex. G, ¶ 57.  "[T]he structure of the claimed 'detection module' is a software program module stored on a memory and understood as a set of software code structured to execute one or more functions.  It is well-established in programming that a software module is a section of code dedicated to a specific function.  When that module of code is instantiated in a device, it is stored in memory as part of the program application." *Id.* Mr. McAlexander also notes that the detection module is a substructure of the claimed "gesture based media recording application."  Since the gesture based media recording application is not subject to § 112 ¶ 6, "the substructures are similarly not subject to § 112 ¶ 6." *Id.*, ¶ 58.  Finally, Mr. McAlexander opines that the gesture-based media recording application, of which the detection module is a part, "must include structure which comprises a configurable touch screen GUI . . . and/or the I/O [input/output] between the touch screen and the software, otherwise the detection module will have nothing to detect." *Id.*, ¶ 59.

According to Dr. Edwards, "a POSITA would understand that the word 'module' in this context would refer to a software component resident in the client application that detects gestures on the user interface." Ex. H, ¶ 65.  As above with the prior term, Dr. Edwards agrees with Mr. McAlexander that in this field, the POSITA would not understand "module" to be a nonce term. Dr. Edwards does not appear to state an affirmative opinion that the "detection module" is subject to § 112 ¶ 6.

Defendant may rely on *Rain Computing, Inc.*, 989 F.3d at 1006, for the proposition that "module" is a nonce term and, thus, the claim is drafted functionally.  But that case has several important differences from the instant situation.  First, there was no agreement among the experts that the claim recited structure.  And second, there was no contention in that case that the "user identification module" was software.

Should the Court disagree with Plaintiff and both experts regarding the recitation of structure and find that the claimed "interface definition module" is subject to § 112 ¶ 6, Plaintiff agrees with the structure and function proposed by OPPO, with the addition of "and equivalents thereof."

### O.      "action management module" ('030 Patent, claim 8)

| Term | Multimodal's Construction | OPPO's Construction |
|---|---|---|
| "action management module" | Not subject to 112, p.6<br><br>Plain and ordinary meaning | Function: starting said recording of media data in a push to talk (PTT) recording mode, on said detection of said first gesture on said first of said defined interface regions<br><br>Structure: A software component of the gesture based media recording application configured to perform a predefined action based on the detection of a gesture on a defined region of a graphical user interface. [FIG. 8, 15: 42 – 55] |

Claim 8 of the '030 patent requires "an action management module configured to start said recording of media data in a push to talk (PTT) recording mode, on said detection of said first gesture on said first of said defined interface regions."  Because the claim does not use the phrase "means for," there is a presumption that 35 U.S.C. § 112 ¶ 6 does not apply.  *Williamson*, 792 F.3d

at 1349.  And here, both experts agree that the "action management module" recites sufficiently definite structure, 112 ¶ 6 does not apply.

According to Mr. McAlexander, the "action management module" is identified and described "as a specific structure that is part of the media recording application." Ex. G, ¶ 64. "[T]he structure of the claimed 'action management module' is a software program module stored on a memory and understood as a set of software code structured to execute one or more functions. It is well-established in programming that a software module is a section of code dedicated to a specific function.  When that module of code is instantiated in a device, it is stored in memory as part of the program application." *Id.* Mr. McAlexander also notes that the action management module is a substructure of the claimed "gesture based media recording application." *Id.*, ¶ 65. Since the gesture based media recording application is not subject to § 112 ¶ 6, "the substructures are similarly not subject to 112 ¶ 6." *Id.*  Finally, Mr. McAlexander opines that the gesture-based media recording application, of which the action management module is a part, "must include structure which comprises a configurable touch screen GUI . . . and/or the I/O [input/output] between the touch screen and the software, otherwise the action management module will have no actions to present to the user." *Id.*, ¶ 66.

According to Dr. Edwards, "a POSITA would understand that the word 'module' in this context would refer to a software component resident in the client application that detects gestures on the user interface."  Ex. H, ¶ 65.  As above with the prior term, Dr. Edwards agrees with Mr. McAlexander that in this field, the POSITA would not understand "module" to be a nonce term.  Dr. Edwards does not appear to state an affirmative opinion that the "detection module" is subject to § 112 ¶ 6.

Defendant may rely on *Rain Computing, Inc.*, 989 F.3d at 1006, for the proposition that "module" is a nonce term and, thus, the claim is drafted functionally.  But that case has several important differences from the instant situation.  First, there was no agreement among the experts that the claim recited structure.  And second, there was no contention in that case that the "user identification module" was software.

Should the Court disagree with Plaintiff and both experts regarding the recitation of structure and find that the claimed "action management module" is subject to § 112 ¶ 6, Plaintiff agrees with the structure and function proposed by OPPO, with the addition of "and equivalents thereof."

## IV.    CONCLUSION

For the foregoing reasons, the Court should adopt Multimodal's proposed constructions and reject Defendant's proposals.

Dated:  March 3, 2023                          Respectfully submitted,

/s/ *Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

*ATTORNEYS FOR PLAINTIFF*
*MULTIMODAL MEDIA LLC*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on March 3, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant